**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BALTIMORE GAS AND ELECTRIC
COMPANY,
                    *Plaintiff,*

MARYLAND OFFICE OF PEOPLE'S
COUNSEL,
                *Intervenor/Plaintiff,*

            and

MARYLAND PUBLIC SERVICE
COMMISSION,
        *Intervenor/Plaintiff-Appellant,*           No. 01-1792

            v.

UNITED STATES OF AMERICA; LOUIS
CALDERA, Secretary of the Army,
                *Defendants-Appellees,*

            and

ENRON FEDERAL SOLUTIONS,
INCORPORATED,
                *Intervenor/Defendant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-00-2599)

Argued: January 22, 2002

Decided: May 31, 2002

Before WIDENER, MICHAEL, and TRAXLER, Circuit Judges.

Dismissed by published opinion. Judge Michael wrote the opinion, in which Judge Widener and Judge Traxler joined.

---

**COUNSEL**

**ARGUED:** Susan Stevens Miller, General Counsel, PUBLIC SERVICE COMMISSION OF MARYLAND, Baltimore, Maryland, for Appellant. Larry David Adams, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Stephen M. Schenning, United States Attorney, Baltimore, Maryland, for Appellee.

---

**OPINION**

MICHAEL, Circuit Judge:

In this action the Maryland Public Service Commission (PSC) seeks to challenge the U.S. Army's solicitation of bids for the right to purchase and operate the electricity and natural gas distribution systems at Fort Meade, which is located in the State of Maryland. Specifically, the PSC claims that the Army violated procurement laws in failing to provide in its solicitation that any successful bidder would be required to submit to the PSC's regulatory jurisdiction. The district court held that such a provision was not required in the solicitation, and the PSC appeals. We do not reach the merits. Rather, we conclude that the PSC lacks standing because it is not an "interested party" under the statute that governs bid protest actions, 28 U.S.C. § 1491, which was enacted as part of the Administrative Dispute Resolution Act of 1996 (ADRA). The appeal is therefore dismissed for lack of jurisdiction.

I.

In 1997 Congress passed a law authorizing the Secretary of a military department to privatize utility systems on military bases and other installations. *See* National Defense Authorization Act for Fiscal Year 1998, Pub. L. No. 105-85, § 2812(a), 111 Stat. 1629 (1997) (codified at 10 U.S.C. § 2688). Thereafter, the Department of Defense

issued Reform Initiative Directive #49, which directs (subject to certain exemptions) the various military departments to privatize the electric, natural gas, water, and wastewater treatment systems on their bases or installations. The directive allows for an exemption when privatization would be uneconomical or would raise unique security concerns. In March of 2000 the Army issued a solicitation for bids on a contract to purchase and operate the electricity and natural gas distribution systems at Fort Meade. The Baltimore Gas & Electric Company (BG&E) filed a protest to the solicitation with the U.S. General Accounting Office (GAO), arguing that the Army's solicitation had to be amended to require that any bidder have franchise rights and a utility license issued by the PSC. After being denied relief in the administrative process, BG&E filed this action seeking declaratory and injunctive relief under the ADRA, specifically, 28 U.S.C. § 1491, in the United States District Court for the District of Maryland. At the time the suit was filed, federal district courts and the Court of Federal Claims had concurrent jurisdiction to hear challenges to federal agency bid solicitations. *See* Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12(a), 110 Stat. 3870 (codified at 28 U.S.C. § 1491).

BG&E argued in district court, as it had before the GAO, that the Army must include in its solicitation the requirement that a bidder fully comply with state utility regulations, including state licensing requirements, and submit to the regulatory jurisdiction of the PSC. Because BG&E was the only utility licensed by the PSC to offer electric and gas service in the Fort Meade area, a declaration to this effect would have limited the Army to awarding any privatization contract for Fort Meade to BG&E. The PSC and the Maryland Office of People's Counsel intervened in the case on the side of BG&E, and an outfit called Enron Federal Solutions, Inc. intervened on the side of the Army. In a thorough opinion the district court determined that the Army had reasonably interpreted federal law when it decided not to require bidders on privatization contracts to obtain state franchise rights and submit to PSC jurisdiction. *Baltimore Gas & Elec. Co. v. United States*, 133 F. Supp. 2d 721 (D. Md. 2001). The district court added in a footnote that it was "highly doubtful" that the PSC had standing under the ADRA to contest the Army's solicitation, but the court was able to avoid the question of the PSC's standing because

another party, BG&E, had presented "all of the issues necessary . . . to a decision." *Id.* at 727 n.8.

BG&E has not appealed the district court's decision, but the PSC appeals insofar as the decision provides that the Army need not require bidders to submit to PSC jurisdiction. Because the PSC is the only appellant, we must confront the question that the district court did not have to decide, namely, whether the PSC has standing under the ADRA to challenge the Army's bid solicitation.

## II.

Only an "interested party" has standing under the ADRA to bring an action to challenge a bid solicitation by a federal agency. 28 U.S.C. § 1491(b)(1). The question, then, is whether the PSC is an interested party in connection with the Army's bid solicitation to privatize electric and gas utility services at Fort Meade. The ADRA does not define "interested party," and until recently the scope of the term was not clear in the primary venue for ADRA bid protest cases, the Court of Federal Claims. In some cases that court had relied on the definition of "interested party" provided in the Competition in Contracting Act (CICA), 31 U.S.C. § 3551(2), which limits an interested party to "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *See, e.g.*, *Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220, 230 n.5 (1997) (looking to § 3551 for guidance in interpreting § 1491). In other cases the Court of Federal Claims had read the term "interested party" broadly to include any party that would have standing under the Administrative Procedure Act (APA) to challenge agency action. *See, e.g.*, *American Fed. of Gov't Employees, AFL-CIO v. United States*, 46 Fed. Cl. 586, 595 (2000), *aff'd on alternate grounds*, 258 F.3d 1294 (Fed. Cir. 2001); *ATA Defense Indus. v. United States*, 38 Fed. Cl. 489, 494 (1997) (suggesting broad reading in dicta). Last year, the United States Court of Appeals for the Federal Circuit resolved the issue, at least for the Federal Circuit, and held that an interested party under § 1491 is limited to an "actual or prospective bidder or offeror" as provided in CICA § 3551(2). *American Fed. of Gov't Employees, AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (*American Federation*).

We are especially interested in the Federal Circuit's views on the "interested party" standing requirement because a sunset provision in the ADRA gives that court exclusive appellate jurisdiction over all ADRA cases filed on or after January 1, 2001. The case before us today was filed before the sunset date, and if the PSC has standing, we have jurisdiction over the appeal. *See* Pub. L. No. 104-320, § 12(e). It is useful nevertheless to understand how and why we are coming to the end of our jurisdiction over ADRA cases. Prior to 1997, jurisdiction over disputes arising out of the solicitation of bids for federal contracts was split between federal district courts and the Court of Federal Claims, with the former having jurisdiction over all bid protests and the latter having jurisdiction only over pre-award protests. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1331-32 (Fed. Cir. 2001) (explaining pre-1997 jurisdiction). In the ADRA of 1996, which became effective on December 31, 1996, Congress granted concurrent jurisdiction over all federal bid solicitation disputes, whether pre-award or post-award, to federal district courts and the Court of Federal Claims. *See id.*; Pub. L. No. 104-320, §§ 12(a), (b). However, a sunset provision in the ADRA provided that unless Congress acted, the jurisdiction of the district courts would terminate on January 1, 2001, and all ADRA cases thereafter would be filed in the Court of Federal Claims. Pub. L. No. 104-320, § 12(d). Congress included the sunset provision (1) to address the problem of forum shopping among the district courts and the Court of Federal Claims and (2) to provide "national uniformity in resolving [federal bid solicitation] disputes." 142 Cong. Rec. S11848 (daily ed. Sept. 30, 1996) (statement of Sen. Cohen). Congress has not acted to extend district court jurisdiction, and thus federal bid solicitation disputes may now be filed only in the Court of Federal Claims. This means that appellate jurisdiction over ADRA cases filed on or after the sunset date, January 1, 2001, now falls exclusively in the Court of Appeals for the Federal Circuit. Thus, as soon as the ADRA cases filed in district courts before the sunset date are worked through the pipeline, the Federal Circuit will be hearing all appeals in ADRA cases. In light of the Federal Circuit's soon to be exclusive role in these cases, it makes sense for us to adopt that circuit's interpretation of the term "interested party" if there is a sound basis for doing so.

The ADRA confers standing on "an interested party objecting to a [bid] solicitation by a Federal agency," 28 U.S.C. § 1491(b)(1), but

the statute does not give any further definition of the term "interested party." The Federal Circuit was called upon to clarify the meaning of the term in *American Federation*. The court began its analysis by recognizing that there are two plausible interpretations of the term "interested party." *American Federation*, 258 F.3d at 1299. The first interpretation is that the term encompasses any party who satisfies the APA's requirement for standing, specifically, "[a] person . . . adversely affected or aggrieved by agency action." 5 U.S.C. § 702. The second (and more restrictive) interpretation is that "interested party" should be construed in accordance with the CICA, a statute that is related to the ADRA. The CICA defines "interested party" to mean "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2). Because "the plain language of [28 U.S.C. § 1491(b)(1)] does not resolve [the] issue" about the meaning of "interested party," the Federal Circuit "look[ed] to the legislative history of [the statute] for an indication of congressional intent." *American Federation*, 258 F.3d at 1299.

The court explained that the legislative history of the ADRA "indicates that Congress intended [in 28 U.S.C. § 1491(b)(1)] to confer on the Court of Federal Claims jurisdiction previously exercised only by district courts under [*Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859 (D.C. Cir. 1970)]." *Id.* at 1300. Under *Scanwell* the district courts had exercised jurisdiction over both pre-award and post-award protests to federal bid solicitations and had used the APA standard of review. *Id.* Thus, the Federal Circuit reasoned that when Congress indicated through legislative history its intent to confer *Scanwell* jurisdiction on the Court of Federal Claims, Congress meant for the Court of Federal Claims to have jurisdiction over both pre- and post-award protests and to judge them under the APA standard of review. Indeed, the ADRA expressly provides that bid challenges are to be reviewed under the APA standard of review, *see* 28 U.S.C. § 1491(b)(4), the same standard applied under the district courts' *Scanwell* jurisdiction. What was less clear, the Federal Circuit explained, was whether Congress's reference to *Scanwell* implied that it "intended to expand the class of parties who can bring bid protest actions in the Court of Federal Claims." *American Federation*, 258 F.3d at 1300. (In pre-1997 cases the Court of Federal claims had only permitted disappointed bidders to bring suit. *Id.* at 1298.) On the one hand, because "[t]he vast major-

ity of cases brought [in district courts] pursuant to *Scanwell* were brought by disappointed bidders," the court suggested that "Congress may have intended the [Court of Federal Claims] to exercise jurisdiction over disputes brought by disappointed bidders only." *Id.* at 1301. "On the other hand, because *Scanwell* itself is based on the APA, Congress could have intended to give the Court of Federal Claims jurisdiction over any contract dispute that could be brought under the APA. Because the language of 5 U.S.C. § 702 is quite broad [it refers to persons 'adversely affected or aggrieved by agency action'], parties other than actual or prospective bidders might be able to bring suit." *Id.* (footnote omitted). The court concluded that the former, more limited interpretation of the statute was preferable in light of the principle that "waivers of sovereign immunity, such as that set forth in § 1491(b)(1), are to be construed narrowly." *Id.* The court also observed that this more limited interpretation is consistent with statements in the legislative history that the ADRA would permit "'a *contractor* [to] challenge a Federal contract award.'" *Id.* at 1301-02 (quoting 142 Cong. Rec. S11848 (daily ed. Sept. 30, 1996) (statement of Sen. Cohen) (emphasis added)).

Finally, the Federal Circuit observed that while Congress does not spell out the meaning of the term "interested party" in the ADRA, Congress's use of that particular term does provide some guidance. Specifically, in drafting § 1491(b)(1), Congress did not adopt the APA's standing requirements by reference or use the broader standing language of the APA. *Id.* at 1302. Rather, Congress chose the term "interested party," the same term given a more limited definition in the CICA, 31 U.S.C. § 3551(2). According to the Federal Circuit, "the fact that Congress used the same term in § 1491(b) as it did in the CICA suggests that Congress intended the same standing requirements that apply to protests brought under the CICA to apply to actions brought under § 1491(b)(1)." *Id.* at 1302. In contrast, when Congress intended to import APA doctrines into the ADRA, it did so explicitly; specifically, when it came to providing for the standard of review in bid protest cases under the ADRA, Congress explicitly provided that the APA standard of review would apply instead of the more narrow standard of review that the Court of Federal Claims had employed prior to the ADRA. *Id.* at 1300, 1302. Congress's failure in the ADRA to explicitly invoke APA doctrines with respect to

standing supports the inference that the APA standing test does not apply to the ADRA.

The Federal Circuit's analysis is sufficiently persuasive for us to adopt it. We therefore "construe the term 'interested party' in § 1491(b)(1) in accordance with the CICA, and hold that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Id.* at 1302.

This brings us to the question of whether the PSC qualifies as an interested party under the definition that we adopt today. That question is easily answered. The PSC, of course, does not claim that it ever attempted (or intended) to submit a bid to purchase and operate the Fort Meade electric and gas utility distribution systems. Rather, its interest in the solicitation is based solely on its desire as a state regulatory body to assert jurisdiction over the private entity that will eventually provide utility services at Fort Meade. Whatever the importance of the PSC's interest in protecting its regulatory jurisdiction, the PSC is not "an actual or prospective bidder or offeror" on the Army's solicitation. 31 U.S.C. § 3551(2). As a result, the PSC is not an interested party under 28 U.S.C. § 1491(b)(1), and it lacks standing to bring a bid protest action. Because the PSC lacks standing to bring this action, it likewise lacks standing to appeal the district court's judgment. Accordingly, the appeal is dismissed for lack of jurisdiction.

*DISMISSED*